RING REFRIGERATOR & ICE-MACHINE CO. **v.** ST. LOUIS ICE MANUFACTURING & COLD-STORAGE CO.

(Circuit Court, E. D. Missouri, E. D. January 3, 1895.

1. PARTIES TO PATENT SUITS—SUIT AGAINST USER — RIGHT OF MANUFACTURER TO BE MADE DEFENDANT.
    A manufacturer is not entitled to intervene in an infringement suit brought against a purchaser of his machine, after a decree has been rendered therein sustaining the patent sued on and declaring infringement, for the purpose of having the decree set aside, merely because he has an indirect interest in the result arising from his possible liability to indemnify other purchasers of like machines against damages which might be adjudged against them in future actions upon the same patent.

2. SAME—ESTOPPEL.
    A manufacturer, upon being invited to assume the defense of an infringement suit brought against the purchaser of one of his machines, declined to do so, except to the extent of paying part of the expenses thereof, and by his vacillating course evinced a purpose to take advantage of the judgment if favorable, and escape responsibility if adverse. *Held*, that he was precluded, after the entry of a final decree, from intervening in the suit for the purpose of having the decree set aside.

This was a suit in equity by the Ring Refrigerator & Ice-Machine Company against the St. Louis Ice Manufacturing & Cold-Storage Company for alleged infringement of a patent relating to gas pumps. A decree having been rendered sustaining the patent, and declaring infringement, an application has now been made by Arthur St. John Newberry, trustee, who is a stranger to the record, to have the decree set aside, as having been entered by collusion.

Chester H. Krum and Frank K. Ryan, for complainant.

Mills & Flitcraft and Phillips, Stewart, Cunningham & Elliott, for defendant.

PRIEST, District Judge.     An application is made in this case by Arthur St. John Newberry, as trustee of the Arctic Ice-Machine Manufacturing Company, and who is not a party to the record, to set aside the final decree rendered herein on May 1, 1894, upon the ground that it was entered pursuant to a collusive arrangement between the plaintiff and the defendant. The decree adjudged complainant's patent to a gas pump valid, and the one used by defendant in its plant for the manufacture of ice, which had been erected for it by the Arctic Ice-Machine Manufacturing Company, an infringement thereof. When the suit was first brought, the defendant addressed a letter to the Arctic Ice-Machine Manufacturing Company at Cleveland, Ohio, notifying it of the claim set forth in complainant's bill, and requested, inasmuch as the plant had been constructed by it, that it should undertake the defense of the suit. It also asked an early reply, to be addressed to the defendant's attorneys, Mills & Flitcraft, and suggesting that satisfactory arrangements might be made with the attorneys named for the management of the defense on its part. This letter was dated November 7, 1892, and fell into the hands of the petitioner, who had been appointed trustee of the Arctic Ice-Machine Manufacturing Company under insolvency proceedings. If any direct reply was made to this letter, it has not been produced. On the 16th of January, 1893, Sherman, Hoyt & Dustin, petitioner's attorneys at Cleveland, wrote Mills & Flitcraft concerning this case, and, among other things, said:

"And Mr. Newberry, the assignee of the Arctic Ice-Machine Manufacturing Company is not willing to assume the burden of all of the defense. The company is insolvent, and has made an assignment to him for the benefit of creditors, and has entirely gone out of business. He wants, however, to do what is right for the St. Louis Ice Manufacturing Company, and would be willing to bear say half of the expense of conducting a litigation, if that will be satisfactory to your clients. * * * If this is satisfactory to you, we will prepare an answer in the suit, and send it to you to be filed, and we will, in connection with yourselves, conduct the defense. We feel sure we will be able to defeat the complainants."

It would seem, from a subsequent letter, that at the time this demand was made upon the Arctic Ice-Machine Manufacturing Company, and at the time petitioner undertook the defense to the extent expressed in the foregoing letter, both parties were under an impression that the Arctic Company had, by the terms of the contract under which the defendant's works were built, agreed to indem-

nify it against any damages for infringements; but this assumption was dispelled when the contract was found just before the trial of the cause. In reply to the letter of the 16th of January, 1893, Mills & Flitcraft said, among other things not material to be considered now:

"We will confer with the officers of the ice company about sharing the expense. We are certain that they would be pleased to have Mr. Newberry pay your expense, and that the ice company would pay ours."

There is no exhibit of the correspondence from that time until January 29, 1894. In the meantime an amended answer had been filed and evidence had been taken, and the case was nearing a trial. On that day, January 29, 1894, the petitioner's attorneys at Cleveland wrote Mills & Flitcraft as follows:

"We wish you would procure the agreement mentioned as soon as possible, as there are some costs connected with the taking of the depositions in this case which ought to be paid, and, if it is the duty of the assignee to pay them, he, of course, wants to. If it is not his duty, the St. Louis Company should provide for them. Mr. Newberry, as assignee of the Arctic Company, while he is favorably inclined to the St. Louis Company, and wishes to see it prevail in its action, cannot assume the burden of this litigation, unless the contract between the Arctic Company and the St. Louis Company requires him to do so, his relation being that of a trustee for the benefit of the creditors of the Arctic Company. You will readily appreciate this, and therefore the importance of knowing just what Mr. Newberry's legal status is in relation to this litigation. Please give this matter your immediate attention, and oblige."

The case was tried and submitted on April 12, 1894, and the decree entered upon the finding of the court on May 1, 1894. On April 13, 1894, Mills & Flitcraft wrote to Mr. Newberry as follows:

"Yesterday we submitted the above to Judge Thayer, we taking five days to file brief. Plaintiff's brief was filed yesterday, so that we had no opportunity to examine the matter. Mr. Morris and Mr. Ring had a considerable talk together. We understand from the attorneys for plaintiff that they had made some kind of an arrangement of settlement. Of this we have not been advised. Our impression is that Ring would like to have some kind of a judgment, and Mr. Morris would like to get out of the matter as easily as he can. We have never understood positively that you, as trustee, had agreed to protect Morris, and pay the amount for any judgment which might be obtained on account of infringement of patent. Of course, if you propose to pay the amount of any judgment without litigation, in your capacity as trustee, you would have a right to insist that we go ahead and fight the case. However, if you are going to compel us to go to a lawsuit to try to collect from you after we have paid on a final judgment which Ring may obtain, we might be inclined to buy our peace for a small sum of money. We are not in fact using the device, and have only used it for a very short time."

Replying to this letter, the petitioner's attorneys, on April 17th, said:

"You of course know Mr. Newberry's relationship to this matter is that of trustee. Mr. Newberry has no desire to avoid any legal obligation of the company, nor to dispute any valid claim against the company. When originally he started in to assist you in your controversy with Ring, he did it upon the assumption that your clients had from his assignor a valid agreement to indemnify them against any damages for infringement. As this litigation has progressed several times, your people have been called upon to furnish a copy of this contract, but up to the present time they have not done so. If there is no valid subsisting obligation, Mr. Newberry could not make any agreement to pay anything. If there is such a binding ·

obligation, he would be willing to pay some small sum, if thereby he could obtain, not only a release for this particular machine, but a release of any claim for all other machines that were sold by the assignor, as well as for all machines that have been sold by him since the assignment. He does not believe that plaintiff Ring has any valid claim, but he might be willing to pay a small sum for peace if thereby he could save any possible litigation on account of other machines. It may be that Mr. Ring wants a consent decree against your clients in order to enable him to more successfully maintain actions against others who have bought machines. If that be so, Ring would probably not want to give a release, and it would be folly in Mr. Newberry to make a settlement, as we have no doubt that you will succeed in defeating Ring in this case, and a settlement will simply invite other litigation."

To this letter Mills & Flitcraft, on April 19th, replied as follows:

"Gentlemen: Your favor of the 17th received. The St. Louis Ice Company only used the device for a short time, and ceased using, and are not using, Ring's device. At the time this litigation was started, we understood that the contract for the erection of the first machine contained a provision that the Arctic Company would indemnify for any damages for infringement, and we were so informed by Mr. Morris. The contract was called to our attention a day or two ago, just about the time of the submission of this case, and in it there is no expressed provision about indemnifying for infringement. The question, of course, is whether or not the seller of a patent article does not, by the sale of the same, make himself liable for any damages that may be obtained against the buyer. Mr. Morris is using two of your machines, also, we believe, using one or two at Kansas City, and he has always stood by the Arctic machines. Mr. Ring offers to let him off very easy in this matter, and, if he was to go on and take the chances of litigation, he would, of course, prefer to take the economical course of making a cheap settlement. We certainly should have obtained a release from Ring of all the claims for damages that he might have, and we do not intend to use his device. This case is in shape for you to obtain a judgment establishing the validity of the patent. We had prepared our brief almost complete in this matter when the matter of compromise came up by some outside talk between Mr. Ring and Mr. Morris. We have intended all the time, in good faith, to go on and contest the case, supposing that it would ultimately appear that there was a contract of indemnity. If you wish to go on, we will go on and finish our brief, and have the matter disposed of. If not, we are inclined to make a settlement. You will get this letter some time to-morrow, and, if there is a desire for the litigation to go on, we will finish our brief, and submit the case, and we shall understand that you would indemnify us for any money judgment that would be obtained against us. If you will not do this, we will make a settlement. Please let us hear from you promptly, and oblige."

To this letter, on April 24th, Mr. Dustin addressed the following reply:

"We have your favor of the 19th inst., and this day have gone over the matter with Mr. Newberry, assignee of the Arctic Company. Mr. Newberry has no desire to establish the validity or invalidity of the Arctic patents, as he has sold the plant, with all the letters patent. He is desirous of simply avoiding litigation in the cheapest way possible. If, therefore, Ring would give him and the old Arctic Company, as well as the purchasers of machines from it and from him, an absolute release and discharge of all claims for damages because of any alleged infringement, Mr. Newberry would pay a small sum in settlement. If, on the other hand, Ring will not do this, Mr. Newberry, as assignee, authorizes us to say that if you will go on with the litigation, in case it should result adversely to the St. Louis Ice Company, he will pay the judgment. If, however, it should result adversely to your client, we would want immediate notice, because we would certainly take an appeal. We believe that you have evidence sufficient to defeat Ring's patent, and, if he is going to annoy us, we might just as well contest it in the present suit as in any other."

We presume the Mr. Ring and Mr. Morris referred to in this correspondence were, respectively, presidents or managers of the plaintiff and defendant companies. Mr. Mills, in his affidavit filed upon this application, said that the letter of petitioner's attorneys, of April 17, 1894, was read to Mr. Morris, and that thereupon, without consultation with him, Mr. Morris had an interview with Ring, the nature and extent of which the affiant did not know; and that, after he had been engaged in the preparation of the brief in the case, he was notified that further argument would be unnecessary, and thereupon he addressed to Judge Thayer, who had the case under advisement, the following letter, dated April 27, 1894:

"On behalf of the defendant, we have concluded not to file any brief. The defendant ceased using the device as soon as notified, and does not propose resuming the use of it. The delay in coming to this conclusion has been caused by correspondence with the parties from whom the machine was bought. The case can, therefore, be considered as submitted on our part."

It appears that at the time of the submission an oral argument was made by counsel for complainant, and briefs also filed, to answer which defendant's counsel took a few days' time by leave of court. No complaint is made that any testimony material to the cause was withheld, or that there was any omission on the part of counsel representing the real defendant to do anything to further the success of the defendant's cause, except that of failing to file a brief. Has the petitioner the right to be made a party defendant upon the record, and contest the complainant's bill? He contends he has, because, while not directly interested in the immediate consequences of this suit, if the decree sustaining complainant's patent should stand, it will be used injuriously to him in other litigation which may be inaugurated by the complainant. A complainant has the undoubted right to choose whom of several wrongdoers he will prosecute, and those not brought into the litigation at the suitor's instance cannot officiously intrude themselves upon the mere ground that the results of the litigation might establish a precedent which, when their rights shall be drawn in question, would impose the task of overcoming the persuasive influence of the adjudication. If the petitioner were not a party to this suit, or had not undertaken to ally himself with the defendant in the defense of it, whatever decree might be entered as to the validity of the complainant's patent would be as to him res inter alios acta; and the mere fact that this decree might hereafter in some manner affect his interest does not except it from this general rule. There are many cases which rightly hold that a stranger to the record, who stands in such legal or contractual relation to a defendant as to be liable over to him, may, by notification to come in and defend, be bound, so far as the defendant is concerned, by any judgment which may be rendered. But this grows out of a contractual or legal privity between the defendant and such stranger. Ford v. O'Donnell, 40 Mo. App. 51. "While the court may in this suit construe the complainant's patent, and such construction may be adhered to in subsequent suits against other persons, that would not determine against petitioner the fact of infringe-

ment, which would be, after all, the main question in the subsequent suit, if one should be brought against the present petitioner," is an observation made by Judge Blodgett in Thomas Huston Electric Co. v. Sperry Electric Co., 46 Fed. 75, which is peculiarly applicable in this case. Of course, there are cases in which a court of equity would be justified, exercising a sound discretion, in permitting other persons than those made defendants by the complainants to come in and defend, but in such cases they are admitted by favor, and not by right, and must make it appear that their interest in the result of the litigation is immediate, certain, and direct. Curran v. Car Co., 32 Fed. 835; Standard Oil Co. v. Southern Pac. Co., 4 C. C. A. 491, 54 Fed. 521.

Such conditions, however, do not exist in the petitioner's application. By the express admissions contained in the correspondence, the petitioner is not concerned with the validity of the complainant's patent. He parted with the plant and patents of the Arctic Company. In the event his vendees were sued by the complainant for infringement, he might be called upon to protect them. Whether he is under an obligation to do so does not appear from this application. The petitioner is precluded upon another ground. He had an opportunity to defend. A duty to do so was urged upon him by the defendant. He declined the full responsibility of such a requirement. Acting, however, upon the suggestion of defendant that the contract between his assignor and it contained a covenant of indemnity, he, to a qualified extent, as indicated by his letter of January 16, 1893, agreed to bear a certain part of the expense of the defense. Of this, however, he repented, and on January 29, 1894, wrote the attorneys of defendant, in whose engagement he declined to participate, in effect that, unless bound to do so by covenants of indemnity in the contract between his assignor and the defendant, he would not be troubled with the litigation. After being advised that the case had been submitted, and urged to make a decisive answer whether he proposed to indemnify the defendant against the damages for infringement in the event the defense failed, he, through his attorneys, again, on April 17, 1894, emphasized the position which he had taken as early as January 29, 1894.

It is true that on the 21st of April, after endeavoring to impose conditions upon the defendant's attorneys, looking solely to his interest aside from this litigation, and which he had no right to ask them to undertake, he does again recall his decision of January 29th and April 17th, and ask them if they cannot accomplish the compromise which he desires made with the complainant, looking to his interest elsewhere, to go on and defend the suit; agreeing to indemnify the defendant. But this letter came too late. Mr. Morris took the petitioner at his word, as expressed in his letter of April 17th, and proceeded to make, so far as the damages were concerned, an exhibit to the complainant which justified it in withdrawing against the defendant a claim for damages. But the course of the petitioner had been so vacillating that the defendant's attorneys were perfectly justifiable in refusing to act upon the expressions

contained in his letter of the 21st.   His whole conduct in this matter with the defendant and defendant's counsel bears unmistakable evidence of an effort on his part to play fast and loose,—to take advantage of the judgment if favorable to the defendant, and to escape all responsibility if it should be adverse.   When he might, by a decisive election, have stepped in and defended, to the extent of assuming absolute control over the defendant's case, he declined to do so.   It is now too late after the decree has been entered for him to interpose with any defense he may have had, however meritorious.   We do not decide whether the decree entered would be a bar or not, because of the part which he took in the litigation between January, 1893, and January, 1894.   If it should be held to be a bar, then the petitioner alone is responsible for this condition.   The petitioner asks that the decree be set aside, and the suit dismissed because it is collusive.   We find nothing to justify this charge; indeed, under the circumstances made apparent by the affidavits and correspondence in this case, it is an ungenerous and ungracious charge.   The suit originated in a genuine contest.   Its bringing was not contrived between the plaintiff and the defendant. The defense was fairly and earnestly conducted upon the real issues. The mere fact that a party, in prudent apprehension of an adverse decree, makes terms upon one feature of the controversy, does not characterize the suit as an imposition upon the jurisdiction of the court.   The very terms which the petitioner in this case points out as evidence of collusion he sought to import into the case for his own benefit.   There are numerous expressions in his letters and the letters of his counsel to the effect that, if the complainant would relieve him and his assignor of damages on account of machines constructed and sold to other parties, the decree might go.   How, then, can he complain that the defendant accepted such a relief? It does not appear that there was any compromise of the case, even upon the feature of damages, between the complainant and the defendant.   It only appears that the defendant succeeded in impressing upon the mind of complainant such facts in the case as, if true, would relieve it from a judgment for damages, and, under this conviction, the complainant waived that part of the relief which it sought.   Where parties plaintiff and defendant, desiring to accomplish a common purpose for their mutual benefit, contrive and bring, the one against the other, an apparent hostile action, courts will welcome a stranger to reveal the fact that it has been imposed upon by such moot litigation, and, being convinced that the suit was a confederation of such purposes, as above indicated, would dismiss the bill.   This case wears not the slightest color of such a transaction.   It results that the petition to be made a party, etc., will be denied.