**Richard KOLLMEYER, by his next friend, Evelyn Kollmeyer, Plaintiff-Appellant,**

**v.**

**John Joseph WILLIS, Defendant-Respondent.**

**No. 8544.**

Springfield Court of Appeals.

Missouri.

Sept. 20, 1966.

Motion for Rehearing or to Transfer to Supreme Court Denied
Oct. 11, 1966.

Farrington & Curtis, Thomas G. Strong, Richard K. Wilson, David G. Holden, Springfield, for plaintiff-appellant.

No appearance for defendant-respondent.

PER CURIAM.

In this factually-unique case, *plaintiff* Richard Kollmeyer, a minor ten years of age when struck and injured in Springfield, Missouri, on October 24, 1964, by a motor vehicle driven by defendant, appeals from a final judgment for $22,500 entered in his favor and against defendant John Joseph Willis in the Circuit Court of Greene County on December 15, 1965. Plaintiff's complaint is that a default judgment for $25,000 against defendant (hereinafter referred to as the default judgment) theretofore entered in the same circuit court on April 30, 1965, should not have been set aside on May 27, 1965, and that the default judgment should have been reinstated in response to plaintiff's requests for that relief in motions presented at different stages of the litigation after May 27. Notwithstanding the amount of the final judgment, we have appellate jurisdiction because the amount in dispute is only the difference between the default judgment of $25,000 and the final judgment of $22,500, or the sum of $2,500. Art. V, Sec. 3, Mo.Const. of 1945; Sec. 477.040.[1] Cf. Robinson v. Beatrice Foods Co., Mo.App., 260 S.W.2d 346, 348 (1). Plaintiff's attorneys have filed an excellent brief, but no appearance has been made and no brief has been presented on behalf of defendant.

Suit was instituted and defendant was served during December 1964. On *January 4, 1965,* defendant appearing by Hosmer and Newberry, attorneys, timely filed (a) motion to dismiss on the ground that the petition did not state a cause of action on which relief could be granted and (b) motion for costs. On *January 11, 1965,* "by agreement" defendant's motion to dismiss was overruled and his motion for costs was sustained with plaintiff ordered to deposit $75 in cash or to file an approved cost bond

within twenty days thereafter. No answer was filed within ten days after defendant's motion to dismiss was overruled by agreement [Rule 55.27(c)] or, for that matter, at any time prior to entry of the default judgment on April 30, 1965; but, on *February 16, 1965,* plaintiff deposited $75 in cash with the circuit clerk.

At 4 P.M. on *April 21, 1965*[2] (so each paper itself recites), three instruments were signed, to wit, (1) an "Application for Leave to Withdraw as Attorneys for Defendant" signed by Hosmer and Newberry, (2) a "Consent to Withdrawal of Attorneys" signed by defendant and acknowledged before David G. Holden, an attorney of record for plaintiff, as notary public, and (3) a "Withdrawal as Attorneys of Record" signed by Hosmer and Newberry.

At 9 A.M. on *April 22, 1965* (so this paper recites), defendant acknowledged receipt of a copy of a typewritten "Notice" that the case would be called for trial on Friday, April 30, 1965, in the Circuit Court of Greene County, Missouri, at which time and place he might appear and defend if he so desired, but that, if he failed to do so, "judgment by a default will be taken against you." The "Notice" bore the handwritten signature of David G. Holden on a line under which the name of "Thomas Strong," another attorney of record for plaintiff, had been typed.

On *April 30, 1965,* the three above-described instruments dated at 4 P.M. on April 21, 1965, were filed in the circuit court; a record entry was made that Hosmer and Newberry were permitted to withdraw as attorneys for defendant; and the above-described "Notice" dated at 9 A.M. on April 22, 1965, and bearing defendant's acknowledgment of service thereof, was filed. The record shows that thereafter on *April 30, 1965,* plaintiff appeared in person,

---

1. All statutory references herein are to RSMo 1959, V.A.M.S.; and all references to rules are to the Supreme Court Rules of Civil Procedure, V.A.M.R.

2. In an affidavit by Thomas Strong, one of plaintiff's attorneys, dated May 24, 1965, it was stated that the trial judge scheduled and held a pre-trial conference at 4 P.M. on April 21, 1965.

by next friend and by attorney, but defendant "fails to appear and makes default," whereupon the court heard plaintiff's evidence, found the issues in his favor, and entered judgment against defendant in the sum of $25,000.

On *May 14, 1965,* "defendant filed" his "Motion to Set Aside Judgment and for New Trial" (hereinafter referred to as the motion to set aside), opening with the recitation "Comes now defendant, John Joseph Willis, by and through Harold J. Fisher . . . ," identified in the motion as attorney for Western Fire Insurance Company (hereinafter called Western) "which issued its policy of automobile liability insurance to defendant insuring the automobile which defendant was operating at the time of the incident" described in plaintiff's petition. The *first* part of the motion to set aside supported the assertion that "defendant has a meritorious defense" to plaintiff's cause of action, in that (so it was averred) as defendant was southbound on Dysart Street and plaintiff was "running north . . . upon the traveled portion of the street, defendant steered to his left to avoid striking plaintiff but . . . plaintiff abruptly changed his path of travel and ran to his right directly into the path of defendant's motor vehicle . . . after plaintiff and defendant's vehicle were in such close proximity [as] to make it impossible for defendant to thereafter avoid striking plaintiff."

The *second* part of the motion to set aside was devoted to the proposition that "defendant's failure to appear and defend . . . was excusable under the circumstances of the instant case." A brief summarization of the averments in the motion follows. "There was and is a dispute between Western . . . and defendant . . . as to whether the policy [issued by Western to defendant] was void ab initio so that there would be no coverage under the said policy afforded to defendant . . . for the accident" in suit. To resolve that dispute, Western instituted a declaratory judg-

ment action in the Circuit Court of Greene County, Missouri, on *December 7, 1964.* On *April 12, 1965,* Western made written request of the court that the declaratory judgment action be set for trial; and, on *April 19, 1965,* plaintiff's attorney Strong made like written request.

Prior to "answer time" in the damage suit, Western "advised defendant . . . that it was denying any coverage under its policy," and defendant then employed attorney Newberry. Upon learning of such employment, Fisher "conferred on numerous occasions" with Newberry and "was assured that defense would be offered to [plaintiff's] petition." In turn, Fisher assured Newberry that, "if it was determined in the declaratory judgment action that [Western's] policy . . . was in effect," Newberry would be paid for services rendered in such defense. The motion to set aside then alleged that no notice either of the withdrawal of Hosmer and Newberry as defendant's attorneys or of the setting of the damage suit for trial on April 30, 1965, was given to Fisher or the Western.

Finally, the motion to set aside averred that, until the declaratory judgment action might be determined "favorably to Western . . . [it] has a direct interest in the defense of the [damage suit] . . . ; that its failure to appear in defense of plaintiff's petition when judgment was rendered on April 30, 1965, was excusable in that it had been assured that a defense would be made by defendant's attorney, Mr. John Newberry; it had no notice that such defense was not being made, that the attorney, in fact, had withdrawn, and that the case had been set for hearing on April 30, 1965."

On *May 24, 1965,* the affidavit of attorney Newberry was filed in which he stated (1) that Western had advised defendant and his attorneys, Hosmer and Newberry, that Western "did not afford coverage with regard to the [damage suit] and . . . would not defend said action . . . ," (2) that Western had "failed and refused to defend" the damage suit until after judg-

ment had been rendered for plaintiff on April 30, 1965, and (3) that "affiant [Newberry] never contracted with Western . . . to defend [the damage suit] in behalf of said company and never assured said company, or its attorneys, that said action would be defended," although, in conversation with Western's attorneys, Newberry or his partner, John Hosmer, "did mention that they had been retained by [defendant] to represent him and that they would protect the interests of their said client to the best of their ability, and that said attorneys have in the past, and in the [declaratory judgment action] even now are so representing said client."

On *May 24, 1965,* plaintiff's attorney Strong filed an affidavit first stating that defendant had delivered summons and petition in the damage suit to Western; that Western had refused to defend the suit; that thereafter defendant had retained Hosmer and Newberry to represent him both in the damage suit and in the declaratory judgment action; that defendant, having failed to file an answer in the damage suit, had been in default therein from and after January 21, 1965; and that Fisher's firm (Allen, Woolsey and Fisher), as attorneys for Western, "had knowledge of such fact." (The source of Strong's information as to the "knowledge" of Fisher's firm concerning defendant's default was not disclosed.) This affidavit then quoted in part the "Notice to Lawyers" in the printed docket delivered to members of the Greene County Bar, including Fisher's firm, on or about March 30, 1965, that the cases (of which the damage suit was one) then pending in Division II of the Circuit Court of Greene County would be called at 9 A.M. on April 6, 1965, and that the date and time of the pre-trial conference in each such case would be announced at the docket call. Affiant Strong then averred in substance that members of Fisher's firm were present in the courtroom during the docket call on April 6, 1965, when a pre-trial conference in the instant case was scheduled for 4 P.M. on April 21, 1965; but that neither Western nor

Fisher's firm was represented at that pre-trial conference, when "the court was notified by the law firm of Hosmer & Newberry that it would withdraw as attorney for [defendant] and that a default judgment could be taken against him" and when the court announced that it would hear "said default" on April 30, 1965. Strong's affidavit then closed with statements that following the pre-trial conference Western and Fisher's firm "knew, or by the exercise of ordinary diligence could have discovered," that the damage suit had been set for trial on April 30, 1965, at which time a default judgment would be taken unless Western "entered an appearance and announced that it would defend"; and that attorney Fields, one of Fisher's partners, was present in the courtroom on April 30, 1965, when the court entered the default judgment and during "some or all of the time" plaintiff's evidence was being introduced, but did not seek to defend or be heard.

On *May 27, 1965, and thus within thirty days after entry of the default judgment on April 30, 1965* [see Rule 75.01], the Honorable Douglas W. Greene, Judge in Division II, entered an order sustaining defendant's motion to set aside "for lack of notice to Western"; and on *June 9, 1965,* Fisher's firm filed an answer on behalf of defendant.

On *June 11, 1965,* plaintiff filed motion to strike defendant's pleadings and issue execution (hereinafter referred to as the *first* motion to strike) on the theory that defendant's motion to set aside the default judgment "was insufficient to authorize or support" the order setting aside the judgment, that "the trial court abused its discretion in setting aside" the judgment, and that the court's order "was made without jurisdiction and is a nullity." The same motion prayed in the alternative that the court strike defendant's pleadings and enter judgment for plaintiff in the sum of $25,000. On *June 15, 1965,* plaintiff's said motion was overruled.

On *October 18, 1965,* "pursuant to agreement of the judges" the damage suit was transferred to Division III, in which the Honorable James H. Keet, Jr., presided.

The fact that the transcript on appeal obviously was incomplete, in that it did not include several pleadings and papers to which reference was made, prompted us to direct ex mero motu, as we are empowered to do in the exercise of our discretion,[3] that the Circuit Clerk of Greene County send up the original file in its entirety and that same be made a part of the transcript on appeal, in order that all relevant pleadings and papers might be examined and considered insofar as their content might shed light upon the conduct of the interested parties and their attorneys at and prior to the setting aside of the default judgment.

On *October 27, 1965,* Jessie M. Ross, the notary public before whom the deposition of defendant's attorney Hosmer had been taken, filed in this case certain questions propounded by Fisher and the objections thereto interposed by Hosmer himself and by plaintiff's attorney Strong, which were certified to the circuit court for rulings on the objections. The plain purpose of the certified questions was to elicit information as to whether or not plaintiff and defendant had entered into a contract of the character legitimatized by Section 537.065,[4] by which plaintiff might have agreed that he would not attempt to collect from defendant personally any judgment obtained in the damage suit. When the first such question was propounded to him, Hosmer responded "now, here, I think I should inject the client-attorney privilege; I say that that is

probably an invasion of that confidential relationship," whereupon plaintiff's attorney Strong interposed the formal objection that "in view of Mr. Hosmer's statement, I would object to the question on that basis, that it calls for a confidential communication." On that ground, Hosmer refused to answer all questions designed to disclose either the existence vel non of a contract of the above-stated character or why he and his partner Newberry had withdrawn during April 1965 as attorneys for defendant in the damage suit.

On *December 7, 1965,* Fisher as defendant's attorney filed an application for continuance of the damage suit which had been set for trial on December 9, 1965. The essence of the application was that defendant could not be found and that he had failed to cooperate with Western in defense of the damage suit as was required by the policy issued to him, but that a continuance was sought in order that Fisher might make further efforts to locate defendant.

When the application for continuance was denied on *December 9, 1965,* Fisher moved for, and was granted, leave to withdraw as defendant's attorney. Thereafter on the same date, plaintiff's *second* motion to strike defendant's pleadings and reinstate the default judgment of April 30, 1965 (essentially the same as his *first* motion to strike of June 11, 1965) was filed and overruled; an interlocutory judgment of default was entered against defendant; upon waiver of trial by jury, evidence was heard on the issue of damages; plaintiff's *third* motion to reinstate the default judgment (again essentially the same as his *first* mo-

---

3. Rule 83.03; Donati v. Gualdoni, 358 Mo. 667, 216 S.W.2d 519, 520(2); Lieffring v. Birt, 356 Mo. 1092, 204 S.W.2d 935, 936(1); Whealen v. St. Louis Soft Ball Ass'n, 356 Mo. 622, 202 S.W.2d 891, 893(3); Lange v. Baker, Mo.App., 377 S.W.2d 5, 7.

4. "Any person having an unliquidated claim for damages against a tortfeasor, on account of bodily injuries or death, may enter into a contract with such tortfeasor or any insurer in his behalf or

both, whereby, in consideration of the payment of a specified amount, the person asserting the claim agrees that in the event of a judgment against the tortfeasor, neither he nor any person . . . claiming by or through him will levy execution, by garnishment or as otherwise provided by law, except against the specific assets listed in the contract and except against any insurer which insures the legal liability of the tortfeasor for such damage . . . ."

tion to strike) was filed; and the court took the case under advisement.

On *December 15, 1965*, the court overruled the *third* motion to reinstate the default judgment and entered judgment for plaintiff in the sum of $22,500 (hereinafter referred to as the final judgment).[5]

On *December 24, 1965*, plaintiff filed his motion to set aside the final judgment and issue execution on the default judgment of April 30, 1965, or in the alternative to reinstate the default judgment, or in the further alternative to enter judgment for plaintiff in the sum of $25,000 notwithstanding the final judgment. This motion included not only all of the averments in plaintiff's *first* motion to strike but also a detailed review of the case designed to support movant's contention that the court had erred in setting aside the default judgment. Plaintiff's said motion having been overruled on *December 31, 1965*, he appealed.

 We agree with plaintiff that, upon this appeal, he is entitled to a determination of his complaint, timely made and carefully preserved at each stage of the case, that the trial court erred in setting aside the default judgment. Sec. 512.020; Farrell v. DeClue, Mo.App., 382 S.W.2d 462. See Farrell v. DeClue, Mo.App., 365 S.W.2d 68.

 Before proceeding to a consideration of the merits of the appeal, certain preliminary observations would seem to be appropriate. Defendant's motion of May 14, 1965, to set aside the default judgment, with attorney Fisher's verification under oath that "the facts contained [therein] are true and correct to my best knowledge and belief," was accepted in the trial court as evidence of the facts therein alleged; and, plaintiff having made no objection either in the trial court or on appeal to treating the verified motion as Fisher's affidavit, we likewise accept it as such. Consult Garrison v. Schmicke, 354 Mo. 1185, 193 S.W.2d 614, 616(7); Osage Inv. Co. v. Sigrist, 298 Mo. 139, 250 S.W. 39, 40(2). Within ten days after the filing of defendant's motion to set aside, plaintiff filed the opposing affidavits of Newberry and Strong. Rule 78.03.

Although no oral testimony was offered upon the motion to set aside, the perspicacious trial judge who ruled that motion was in position to have had relevant personal knowledge not reflected by the cold transcript, which he had a right to consider in connection with, and in evaluation of, the affidavits.[6] For example, it was averred in an affidavit filed in opposition to defendant's motion to set aside that one of Fisher's partners was present in the courtroom on April 30, 1965, when the court entered the default judgment and during "some or all of the time" plaintiff's evidence was being introduced. Of course, the trial judge himself was in position to have known who was present on that occasion. And no doubt he had personal knowledge as to whether or not the partners and asso-

---

5. Although this distinction is not of significance here, strictly speaking the final judgment was not a true default judgment in that the case then was pending upon the issues joined by plaintiff's petition (amended as to the ad damnum) and defendant's answer filed on June 9, 1965, but rather was a judgment entered upon defendant's *default in appearance* when the case was called for trial. J. G. Jackson Associates v. Mosley, Mo.App., 308 S.W.2d 774, 777(3); Brooks v. McCray, Mo.App., 145 S.W.2d 985, 987(1); National City Bank of St. Louis v. Pattiz, Mo.App., 26 S.W.2d 815, 816(1); Munroe v. Dougherty, 196 Mo.App. 124, 190 S.W. 1022, 1024(1).

6. See Savings Trust Co. of St. Louis v. Skain, 345 Mo. 46, 131 S.W.2d 566, 573 (13); State ex rel. Murphy v. Aronson, Mo.App., 330 S.W.2d 140; Gosnell v. Gosnell, Mo.App., 329 S.W.2d 230, 235 (10); In re Henry County Mut. Burial Ass'n, 229 Mo.App. 300, 77 S.W.2d 124, 126(6, 7); Cherry v. Cherry, 225 Mo.App. 998, 35 S.W.2d 659, 661(8). Consult also Ewart v. Peniston, 233 Mo. 695, 136 S.W. 422; Reid v. Moulton, Mo., 210 S.W. 34; Vaught v. Hez Brown Mortgage Co., Mo.App., 289 S.W. 655, 657 (7).

ciates in Fisher's firm, officing in the same city and practicing regularly in his court, were of such number that, absent some specific notice, one partner fairly could not have been charged with knowledge of the identity and status of all cases being handled by every partner and every associate.

The trial judge also could have examined the pleadings and papers in the original file, as we have done following transmittal of the file to this court. And, examining those pleadings and papers, it would have required none of the specialized skill or competence of a professional document examiner for the trial judge to have observed, as we have, that plaintiff's petition was written in pica type on paper watermarked "Eaton's Corrasable Bond"; that defendant's motion to dismiss and motion for costs filed by Hosmer and Newberry on January 4, 1964, were written in smaller elite type on paper watermarked "Four Star Bond"; but that (a) the three instruments dated at 4 P.M. on April 21, 1965, to wit, "Application for Leave to Withdraw as Attorneys for Defendant" signed by Hosmer and Newberry, "Consent to Withdrawal of Attorneys" signed by defendant and acknowledged before David G. Holden, an attorney of record for plaintiff, as notary public, and "Withdrawal as Attorneys of Record" signed by Hosmer and Newberry, (b) the "Notice" of the trial setting on April 30, 1965, served on defendant by Holden at 9 A.M. on April 22, 1965, and (c) Newberry's affidavit filed by plaintiff in opposition to defendant's motion to set aside, were written in pica type on paper watermarked "Eaton's Corrasable Bond."

Reviewed in its entirety, the record indicates an uncommon and unexplained measure of cooperation between plaintiff's attorneys on the one hand and defendant and his personal attorneys on the other hand. We hasten to emphasize that *all* of the above-mentioned attorneys are known to us as gentlemen of professional honor and integrity, and that their singularly cooperative course of action in the damage suit might have been referable to a contract of the character legitimatized by Section 537.065 (hereinbefore quoted marginally in note 4). However, we do not reach the question as to whether such course of action would have been within the contemplation and blessing of that legislative enactment, for the record does not show the execution or existence of any such contract but, on the contrary, reflects only the deliberate refusal of defendant's personal attorney, supported by like objections on the part of plaintiff's attorney, to divulge any information on this subject in response to specific inquiry by Western's attorney. We must take the record as it comes to us [Bennett v. Wood, Mo., 239 S.W.2d 325, 327(2); McCandless v. Manzella, Mo., 369 S.W.2d 188, 191(6); Schreck v. Parker, Mo.App., 388 S.W.2d 538, 544(12)] and must determine the instant appeal without reference to Section 537.065 or any contract executed pursuant thereto.

Our reports are liberally sprinkled with literally scores of cases dealing with the setting aside of default judgments, not only in response to timely motions but also in the exercise of the inherent power of trial courts to do so while a judgment remains in the breast of the court, formerly during the judgment term [7] and now *"for good cause"* [Rule 75.01] during the period of

---

7. Wooten v. Friedberg, 255 Mo. 756, 198 S.W.2d 1, 5(1); Aull v. St. Louis Trust Co., 149 Mo. 1, 50 S.W. 289, 292; Dietrich v. Dietrich, Mo.App., 28 S.W. 2d 418, 419. See Faulkner v. F. Bierman & Sons Metal & Rubber Co., Mo. App., 294 S.W. 1019, 1020(2); Ekonomou v. Greek Orthodox Church St. Nicholas, Mo.App., 280 S.W. 57, 58(1); People's Bank of Holcomb v. Bullock, 216 Mo.App. 492, 270 S.W. 119, 120(2); Bruner v. Ingersoll-Rand Drill Co., Mo. App., 233 S.W. 256, 258(1); Dower v. Conrad, 207 Mo.App. 176, 232 S.W. 174, 175(1).

thirty days after entry of judgment.[8] (All emphasis herein is ours.) In the case at bar, the trial court's order setting aside the default judgment referred to defendant's motion to set aside. However, that order may be treated in legal contemplation as action taken by the court of its own initiative but at defendant's suggestion,[9] and should be sustained here if we properly may conclude that, in setting aside the default judgment "for lack of notice to Western," the trial court acted *"for good cause."* Rule 75.01.[10] In fact, plaintiff's counsel concede in their brief "that a *defendant* to an action, *for good cause*, has a right to have a default judgment set aside." But counsel's position is that Western "had no standing to move for the vacation of the judgment" and that, even if it did, neither *plaintiff's* failure nor *Newberry's* failure to notify Western of the trial setting or of the withdrawal of Hosmer and Newberry as defendant's attorneys would support the trial court's order setting aside the default judgment.

*Did Western have any standing to move for vacation of the default judgment?* For the purposes of this inquiry, we assume (a) that, as plaintiff insists, defendant *person-*

*ally* made no showing which would have entitled him to a new trial, since he had actual notice of the trial setting and had been in default in his pleadings for more than three months prior thereto, and (b) that the motion to set aside the default judgment, although filed in the name and as the motion of defendant (*of which fact no complaint has been made by plaintiff either in the trial court or on appeal*), actually reflected a plea by Western, who was (to adopt the characterization of plaintiff's counsel) "the only party interested in vacating the judgment." Nevertheless, it does not follow that, in the circumstances of this case, Western "had no standing to move for vacation of the judgment."

The general rule, upon which plaintiff relies, is that a stranger to the record has no right to move for vacation of a judgment. 49 C.J.S. Judgments § 293b, p. 540. But plaintiff overlooks the limitation that, in some instances, one not a party to the record, whose rights are injuriously affected by a judgment[11] as the rights of an indemnitor may be,[12] will be heard upon his motion to set aside a judgment. The automobile liability policy issued by Western to defendant was essen-

8. Rule 75.01; Harrison v. Weisbrod, Mo. App., 358 S.W.2d 277, 282(4); Romig v. Romig, Mo.App., 360 S.W.2d 737, 738 (1); Long v. Stilwell Homes, Inc., v. 333 S.W.2d 103, 105; Mid-States Equipment Corp. v. Hobart Welders Sales & Service, Mo.App., 233 S.W.2d 757, 758(3).

9. Harrison, supra note 8, 358 S.W.2d at 282; Long, supra note 8, 333 S.W.2d at 105–106; Mid-States Equipment Corp., supra note 8, 233 S.W.2d at 758. See State ex rel. State Highway Com'n v. Rascher, 350 Mo. 1138, 169 S.W.2d 941(1).

10. Plaintiff's counsel point to our statement in Willis v. Willis, Mo.App., 274 S.W.2d 621, 625(4), that "a judgment validly rendered following a trial upon the issues cannot be vacated except upon 'some legal ground' "; but, eschewing (there and here) any attempt to define the terms "some legal ground," by the quoted language we intended (as the next paragraph of the opinion indicated) no

more than emphasis of "the idea that a judgment should not be set aside arbitrarily, capriciously or without good cause . . . ."

11. Ladd v. Stevenson, 112 N.Y. 325, 19 N.E. 842, 844(2); Bardach v. Mayfair-Flushing Corp., 49 Misc.2d 380, 267 N.Y.S. 2d 609, 612(2); In re Board of Directors of Automatic Chain Co., 134 App.Div. 863, 119 N.Y.S. 379, 381(1), affirmed 198 N.Y. 618, 92 N.E. 1078; White v. Central Mut. Ins. Co., 150 Kan. 47, 91 P.2d 1(1); Guenther v. Funk, 67 N.D. 543, 274 N.W. 839, 843, 112 A.L.R. 428; Dimick v. Deringer, 32 Cal. 488, 491; 49 C.J.S. Judgments § 293b, l. c. 541.

12. Jakobi v. Gorman, 2 Misc. 190, 21 N.Y.S. 762, 763(1); Manahan v. Petroleum Producing & Refining Co., 198 App.Div. 192, 189 N.Y.S. 127, 130; Aetna Insurance Co. v. Aldrich, 38 Wis. 107, 112-113; 1 Freeman on Judgments (5th Ed.), § 260, l. c. 524; 49 C.J.S. Judgments § 293b, l. c. 541.

tially a contract of indemnity;[13] the relationship between the parties to the contract was that of indemnitor and indemnitee; and, if the default judgment had not been set aside, Western would have been bound by that judgment as to all issues necessarily determined thereby,[14] including the issues as to defendant's liability to plaintiff[15] and the amount of damages to be awarded for plaintiff's injuries.

■ We have not overlooked the fact emphasized by plaintiff that Western had instituted a declaratory judgment action in which it had asserted that the policy issued to plaintiff was void ab initio, and that its denial of coverage under the policy had caused defendant to employ Hosmer and Newberry as his personal attorneys. But the policy contract between Western and defendant could not properly have been treated other than as a valid and binding instrument unless and until there had been a final judicial declaration to the contrary; and, when the default judgment in the damage suit was entered on April 30, 1965, the declaratory judgment action remained pending and undetermined[16] upon the request of Western's attorney on April 12, 1965, that said action be set for trial and the like request of plaintiff's attorney on April 19, 1965, only two days before the pre-trial conference in the damage suit when defendant's personal attorneys withdrew and that case was set for taking the default judgment.

■ Frankly conceding that they have found no case "with facts in point on the issue before us," plaintiff's counsel cite Garcia v. Gallo, 176 Cal.App.2d 658, 1 Cal. Rptr. 539, and Ring Refrigerator & Ice-Machine Co. v. St. Louis Ice Mfg. & Cold-Storage Co., C.C.Mo., 67 F. 535, in support of their assertion that Western had no standing to move for vacation of the default judgment. Neither case is persuasive here. As counsel recognize, in Garcia, supra, the appellate court did not determine the insurer's right to move for vacation of the default judgment taken against defendant-insured, but *affirmed* the trial court by concluding that the affidavits submitted in support of insurer's motion were "wholly insufficient to justify any finding" of a statutory ground for relief [1 Cal.Rptr. at

13. Mangelsdorf v. Pennsylvania Fire Ins. Co., 224 Mo.App. 265, 26 S.W.2d 818, 822 (7); Kansas City, M. & B. R. Co. v. Southern Railway News Co., 151 Mo. 373, 385, 52 S.W. 205, 207, 45 L.R.A. 380; 29 Am.Jur., Insurance, § 3, p. 433; 44 C.J.S. Insurance § 1, p. 471. See Breeden v. Frankfort Marine, Acc. & Plate Glass Ins. Co., 220 Mo. 327, 360, 119 S.W. 576, 584; Binswanger v. Employers' Liability Assur. Corp., 224 Mo. App. 1025, 28 S.W.2d 448; Standard Life & Acc. Ins. Co. v. Bambrick Bros. Const. Co., 163 Mo.App. 504, 143 S.W. 845, 848 (1).

14. V.A.M.S. § 379.200; Finkle v. Western Automobile Ins. Co., 224 Mo.App. 285, 26 S.W.2d 843, 849(10, 11); Pyle v. Bituminous Casualty Corp., 42 Tenn.App. 145, 299 S.W.2d 665, 669(1); Jertson v. Hartley, 342 Mass. 597, 174 N.E.2d 663, 667(7); Miller v. United States Fid. & Cas. Co., 291 Mass. 445, 197 N.E. 75, 77(8, 9); Lamb v. Belt Casualty Co., 3 Cal.App.2d 624, 40 P.2d 311, 314(4, 5); 8 Appleman, Insurance Law and Practice, § 4860, p. 289. See Washington Gaslight Co. v. District of Columbia, 161 U.S. 316, 329–330, 16 S.Ct. 564, 40 L.Ed. 712, 719(4); United Pacific Ins. Co. v. Meyer, C.A.9, 305 F.2d 107, 117 (6); B. Roth Tool Co. v. New Amsterdam Cas. Co., C.A.8, 161 F. 709, 712; Listerman v. Day & Night Plumbing & Heating Service, Inc., Mo.App., 384 S.W. 2d 111, 119(8), and cases collected in note 5.

15. Although, as between plaintiff and Western, the latter could have asserted any defense which Western might have asserted as a defense in an action against it by defendant-insured. Meyers v. Smith, Mo., 375 S.W.2d 9, 13(2, 3); Adams v. Manchester Ins. & Ind. Co., Mo.App., 385 S.W.2d 359, 363(3); Donlon v. American Motorists Ins. Co., Mo.App., 147 S.W.2d 176, 178(2); 8 Appleman, Insurance Law and Practice, § 4811, p. 164; Id., § 4813, p. 179; Id., § 4814, p. 183.

16. Nothing in the record indicates what, if any, disposition of the declaratory judgment action has been made.

544]—a sound conclusion upon the facts of that case. And in Ring, supra, an equity suit for alleged infringement of plaintiff's patent relating to a gas pump installed in defendant's plant by the manufacturer, the court, in denying the manufacturer's after-judgment motion to set aside the decree against defendant, quoted as "peculiarly applicable" the statement that " '[w]hile the court may in this suit construe the complainant's patent . . . that would not determine against petitioner [manufacturer] the fact of infringement, which would be, after all, the main question in the subsequent suit, if one should be brought against the present petitioner.' " *67 F. at 539–540.* In the circumstances of the case at bar, we are of the opinion that it was permissible and proper for the trial court to entertain and rule on its merits defendant's (Western's) motion to set aside the default judgment.

■■■■ *Was the default judgment set aside "for good cause"?* The setting aside of a default judgment is a matter resting largely in the discretion of the trial judge,[17] which is " 'not a mental discretion, to be exercised ex gratia, but a legal discretion, to be exercised in conformity with the spirit of the law, and in a manner to subserve, and not impede or defeat, *the ends of substantial justice.*' " Hall v. McConey, 152 Mo.App. 1, 11, 132 S.W. 618, 621; Savings Finance Corp. v. Blair, Mo.App., 280 S.W.2d 675, 678(8). And the principle, widely recognized in other categories of litigation [see

Levee Dist. No. 4 of Dunklin County v. Small, Mo.App., 281 S.W.2d 614, 618, and cases cited in note 2], that each case must rest and be ruled upon its own particular facts is especially applicable in an inquiry as to whether a trial court has been guilty of an abuse of discretion in setting aside, or in refusing to set aside, a default judgment.[18] As our predecessors on this bench so aptly phrased it, "these cases, involving the wisdom of trial judges in the exercise of the discretion vested in them by law, are in the nature of things to be considered one at a time, and not as an integral branch of our system of jurisprudence, where we can evolve certain rules of conduct that will fit any certain number or character of cases." Parks v. Coyne, 156 Mo.App. 379, 391, 137 S.W. 335, 339(3). See Perkins v. Travis, Mo.App., 194 S.W. 730, 731.

■■■ One of the statements most frequently recurring in cases of this character is that an appellate court is less likely to interfere when the trial court has set aside a default judgment than when it has not.[19] This is for the reason that when the judgment is set aside, the case is reopened and justice will yet be done on the merits [Whitledge v. Anderson Air Activities, Mo., 276 S.W.2d 114, 116; Hartle v. Hartle, Mo.App., 184 S.W.2d 786, 788; Parks, supra, 156 Mo.App. at 395, 137 S.W. at 341], and is in keeping with and in furtherance of the policy of the law to try and determine cases on their merits when that will not result in harmful delay.[20]

17. Williams v. Barr, Mo.App., 61 S.W.2d 420, 421(2); Case v. Arky, Mo.App., 253 S.W. 484(1); Munroe v. Dougherty, 196 Mo.App. 124, 190 S.W. 1022, 1024(3).

18. Crown Drug Co. v. Raymond, Mo.App., 51 S.W.2d 215, 216; Karst v. Chicago Fraternal Life Ass'n, Mo.App., 22 S.W. 2d 178, 181; Perkins v. Travis, Mo. App., 194 S.W. 730, 731. See Whitledge v. Anderson Air Activities, Mo., 276 S.W. 2d 114, 116; Levee Dist. No. 4 of Dunklin County v. Small, Mo.App., 281 S.W.2d 614, 618.

19. Whitledge, supra note 18, 276 S.W.2d at 116; Levee Dist. No. 4 of Dunklin County, supra note 18, 281 S.W.2d at 618; Hartle v. Hartle, Mo.App., 184 S.W.2d 786, 788(1); Anspach v. Jansen, 229 Mo.App. 321, 78 S.W.2d 137, 139 (4); Muth Realty Co. v. Timmerberg, 178 Mo.App. 654, 161 S.W. 589, 591(4); Armstrong v. Elrick, 177 Mo.App. 640, 160 S.W. 1019, 1022(3); Parks v. Coyne, 156 Mo.App. 379, 137 S.W. 335, 340–341 (8).

20. Tucker v. St. Louis Life Ins. Co., 63 Mo. 588, 593; Savings Finance Corp. v. Blair, Mo.App., 280 S.W.2d 675, 678; Hartle,

In the final analysis, the primary purpose and broad objective of all litigation are, simply and succinctly stated, to do justice. Levee Dist. No. 4 of Dunklin County, supra, 281 S.W.2d at 618, and cases there cited. To that end, many judgments have been set aside by trial courts in the exercise of their inherent power so to do, while the judgment remains in the breast of the court, *"in the interest of justice"* [Ewart v. Peniston, 233 Mo. 695, 136 S.W. 422, 425(4); Cherry v. Cherry, 225 Mo.App. 998, 35 S.W.2d 659, 660(3)] or *"as justice demands"* [Dietrich v. Dietrich, Mo.App., 28 S.W.2d 418, 419 (2); Faulkner v. F. Bierman & Sons Metal & Rubber Co., Mo.App., 294 S.W. 1019, 1020(2)—see Aull v. St. Louis Trust Co., 149 Mo. 1, 50 S.W. 289, 292] or *"as justice requires"* [Reid v. Moulton, Mo., 210 S.W. 34, 36(5); Ekonomou v. Greek Orthodox Church St. Nicholas, Mo.App., 280 S.W. 57, 58—see Wooten v. Friedberg, 255 Mo. 756, 198 S.W.2d 1, 5(1)] or *"when that is necessary to prevent injustice."* People's Bank of Holcomb v. Bullock, 216 Mo.App. 492, 270 S.W. 119, 120(2).

As we have noted, the trial court has, during the period of thirty days after entry of judgment, the same inherent power to vacate a judgment "for good cause" as, under prior practice, it did during the judgment term. Rule 75.01 and cases cited in note 8. In view of the foregoing principles recognized in default judgment cases, it is entirely understandable that, insofar as we have been able to determine, no Missouri court has undertaken to define "good cause" in a case involving the vacation of a default judgment; and it would seem both unnecessary and unwise for us to do more than suggest that, in this as in other categories of cases, " '[g]ood cause' depends upon the circumstances of the individual case, and a finding of its existence lies largely in the discretion of the officer or court to which the decision is committed" [Wilson v. Mor-

ris, Mo., 369 S.W.2d 402, 407(7)—see also Buttinger v. Ely & Walker Dry Goods Co., Mo.App., 42 S.W.2d 982, 984], subject to the limitation that a judgment may not be set aside arbitrarily or capriciously [Willis v. Willis, Mo.App., 274 S.W.2d 621, 625 (5)] or without giving the party to be affected adversely reasonable notice and an opportunity to be heard. Savings Trust Co. of St. Louis v. Skain, 345 Mo. 46, 131 S.W. 2d 566, 574(14).

In insisting that the trial court did not act "for good cause" in setting aside the default judgment "for lack of notice to Western," plaintiff argues that *his* failure to notify Western of the trial setting and of the withdrawal of defendant's attorneys could not have furnished "good cause" for the court's order "since plaintiff had no legal or moral obligation to furnish such notice" to Western. For the purposes of this opinion, we may so assume without, however, considering or ruling plaintiff's quoted contention on its merits.

However, defendant's (Western's) motion to set aside and plaintiff's opposing affidavits presented to the trial court conflicting statements as to whether or not *Newberry*, defendant's personal attorney, had assured Fisher, Western's attorney, that the damage suit would be defended, thus raising an issue of fact which we prefer to regard as an unfortunate misunderstanding between honorable members of the bar. Even so, this issue is "deemed found in accordance with the result reached" [Rule 73.01(b)], and we proceed on the premise that the trial court found that Fisher was given such assurance that the damage suit would be defended and that he had not known prior to entry of the default judgment that, in fact, no defense was being made and defendant's personal attorneys had withdrawn. And, finding that such assurance of defense had been given to Fisher, the trial court no doubt further found

supra note 19, 184 S.W.2d at 788; Crown Drug Co., supra note 18, 51 S.W. 2d at 216; Karst, supra note 18, 22 S.W.

2d at 181; Hall v. McConey, 152 Mo.App. 1, 132 S.W. 618, 621.

that Fisher reasonably might have relied, and actually did rely, thereupon. For courts (at least those in this geographical area) well know that, in representing their clients, attorneys frequently depend upon oral assurances by their brethren of the bar concerning numerous semi-routine matters such as settings and resettings, continuances, depositions, appearances, delays in pleading, and many others; that this practice is a useful and time-saving tool of the profession, which facilitates the transaction of legal business, expedites the handling and disposition of litigation, and works to the ultimate benefit of clients; and that the principle that one attorney's word to another is his honor has become a basic precept and article of faith in the unwritten moral and ethical code of our ancient and honorable profession.

In the case at bar, we have a combination of two factors not present in any case cited or found, namely, (a) the assurance by one of defendant's personal attorneys to an attorney for defendant's insurer-indemnitor that the case would be defended, followed by a withdrawal of those attorneys and setting of the case for the taking of a default judgment without notice to insurer's-indemnitor's attorney, coupled with (b) an uncommon and unexplained measure of cooperation between plaintiff's attorneys and defendant's personal attorneys. Expressing no opinion and intending no holding except as to the specific situation presented by the record before us, we are of the considered conviction that, in the exercise of the judicial discretion vested in him, the trial judge reasonably might have found that "lack of notice to Western" constituted "good cause" to set aside the default judgment and that, upon this appellate review, we may not properly declare that he abused his discretion in acting for that stated reason.

Under one point in their brief, plaintiff's counsel cite cases [Levee District No. 4 of Dunklin County, supra, 281 S.W.2d at 617 (7); Case v. Arky, Mo.App., 253 S.W. 484

(2)] stating the general rule that one seeking to set aside a default judgment must show that his failure to appear was not due to negligence and that he has a meritorious cause of action or defense, as the case may be. If a showing of the same requirements is prerequisite to vacation of a judgment under Rule 75.01 (another question upon which it is unnecessary for us to write or rule), the record in the instant case would impel the same conclusion. For plaintiff's brief does not seriously dispute the sufficiency of defendant's (Western's) verified motion to set aside (treated as Fisher's affidavit of the facts therein averred), to make a sufficient showing that defendant had a meritorious defense. And, as already indicated, we are unwilling to join with plaintiff's counsel in branding Western's inaction in the damage suit *prior* to the taking of the default judgment as negligence, in view of the assurance of defense which the trial court necessarily found to have been given by defendant's personal counsel, the failure of said counsel to notify Western of their withdrawal and the setting for the taking of a default judgment, and Western's early institution of the declaratory judgment action for the trial of which both plaintiff and Western had made written requests of the court within a few days prior to entry of the default judgment in the damage suit.

In closing, we are moved to comment that this opinion reflects not only the settled views of the present three judges of this court but also the considered conclusion as well as some of the distinctive language of our recently-departed brother, the Honorable Justin Ruark, who was engaged in the preparation of an opinion in this case at the time of his passing.

The order of May 27, 1965, setting aside the default judgment of April 30, 1965, in the sum of $25,000 is approved, and the final judgment of December 15, 1965, in the sum of $22,500 is affirmed.

STONE, P. J., and HOGAN and TITUS, JJ., concur.