Olga **FULTZ**, (Plaintiff) Respondent,

v.

**SOUTHWESTERN BELL TELEPHONE COMPANY**, (Defendant) Appellant.

No. 31504.

St. Louis Court of Appeals.

Missouri.

Sept. 15, 1964.

Rehearing Denied Oct. 13, 1964.

John Mohler, Leo E. Eickhoff, Jr., Donald K. King, St. Louis, for appellant.

Padberg & Raack, St. Louis, for respondent.

WOLFE, Judge.

This is an action for damages arising out of personal injuries which the plaintiff sustained when the automobile which she was driving was struck by a truck owned and operated by the defendant. The defendant counter-claimed for damage to the truck. There was a verdict and judgment on the plaintiff's cause of action for the plaintiff in the sum of $7,500, and a verdict and judg-

ment for the plaintiff on the defendant's counter-claim. Thereafter the defendant filed a motion for a judgment in accordance with its motion for a directed verdict or, in the alternative, a motion for a new trial. The trial court overruled the defendant's motion for a judgment and overruled the motion for a new trial, contingent upon the plaintiff remitting $2,000 from the judgment entered. The remittitur was made by the plaintiff, and from the judgment so reduced the defendant prosecutes this appeal.

The collision by which the plaintiff was injured occurred at the intersection of Mc-Causland and Dale Avenue in the City of St. Louis, on January 23, 1961. McCaus-land runs in a north and south direction, and Dale runs to the east and west. Mc-Causland is about 40 feet in width and carries four lanes of traffic. The lanes are about ten feet wide, and two are southbound and two are northbound. Dale is a three-lane street. The traffic at the intersection is controlled by traffic signal lights. A left turn may be made at the intersection on the green light, but cars making the left turn are obliged to yield to those proceeding straight ahead.

The plaintiff testified that she was fifty-one years of age and was employed as a waitress. She lived in an apartment on the east side of McCausland. After 4:00 P.M. no parking was permitted on McCausland, and she left her apartment at about four o'clock to move her car, which was parked on the west side of the street. She intend-ed to drive a short distance south on Mc-Causland to its intersection with Dale, and then to go east on Dale to an alley where she could park the car. She drove the short distance south, and her car was in the lane nearest the center of McCausland. It was necessary for her to make a left turn at the Dale intersection. Her signal flasher was operating as she came to the intersection. She stopped her car at the line for a cross-walk as the light was red.

On the opposite side of Dale and headed north a large truck was stopped and waiting for the signal to change. It was in the northbound lane near the center line of Mc-Causland, and signaling that it was going to turn toward the west. There were cars behind the truck. When the light changed the driver of the truck facing north signaled the plaintiff to proceed in front of him in her left turn.

McCausland slopes upward to the south of the intersection to the crest of a hill, and no cars beyond the crest can be seen from the intersection. The crest of the hill was estimated by the plaintiff to be 150 feet south of the intersection. When the signal turned green, plaintiff turned her car in front of the truck facing her and stopped and looked up the hill. She could see all the way up the hill to the crest. She saw no vehicles approaching and she proceeded to cross the northbound lane of McCausland. She looked ahead and did not again look south.

She estimated her speed to have been about five or eight miles per hour across the east lane of McCausland. She said that it was not more than eight, and that her speedometer was at five miles per hour at the time the car was struck. She traveled until the front of her car was about two or three feet beyond the east curb line of Mc-Causland and into Dale. It was then that her car was struck by the defendant's truck, which was traveling north on McCausland. Her car was a two-door sedan and was struck approximately in the center of the right side. The damage to the car extended over the door and back over the body of the car to the right rear wheel. She said that the force of the collision threw her to the left, and she was thrown against the door and her leg struck the emergency brake. The left door opened, and the back of plain-tiff's car was pushed to the north curb by the force of the collision.

The plaintiff called to the stand two boys who witnessed the accident. One was nam-ed Bobby Watts, who was fourteen years of age. He testified that he was standing on the northeast corner of Dale and Mc-

Causland, and that he saw the plaintiff signal for a left turn as her car came into the southbound left-turn lane. He said that in the northbound left-turn lane there was a large City Products Coal truck. There were cars behind the coal truck. He said that the driver of the coal truck signaled for the plaintiff to turn in front of him, and that she made the turn at a slow, continuous speed of not more than five miles per hour. He said there were no cars in the curb lane for northbound traffic, but he had no recollection of the plaintiff stopping before entering the outside northbound lane. As she crossed this lane, her car was struck by the defendant's truck. He did not notice the defendant's truck as it approached plaintiff's car until it was 10 feet away. After the collision defendant's truck went beyond the intersection and came to a stop by the east curb of McCausland. He could not estimate the speed of the truck before it hit plaintiff's car, but it seemed to him that the car was going 35 miles per hour as it came from the place of the collision and stopped.

The other boy who testified was Mike Olsen, age twelve. He saw the plaintiff's car pull up in the left-turn lane for southbound traffic. He said that plaintiff turned left in front of a large truck after the driver had waved her on. The truck was in the left-turn lane for northbound traffic. The curb lane for northbound traffic was free of traffic, as far as he could see. He saw defendant's truck coming toward her from a position 84 feet back from the curb line of Dale Avenue. He had paced off the distance from the curb to where he had seen the truck, and it was 40 paces. It was agreed that forty of his paces would equal 84 feet. He said that the truck did not slow up, and when the front of plaintiff's car was a foot or two into Dale, the defendant's truck struck her car. At another point in his testimony he was asked, "The telephone truck had to drive these 40 steps while Mrs. Fultz was just going across the one lane? A. Yes, it did."

Defendant's driver was called as a witness in the defendant's case, and stated he was employed as a coin collector. His work was to take coins collected from certain coin-operated telephones consigned to him down to the main Telephone Company office. He had completed his collection for the day and was on his way to turn in the money. He stated he was going north on McCausland and was driving a company truck. He said that he had been traveling in the inside lane but switched over, and that he was in the outside lane as he came to the crest of the hill south of the Dale Avenue intersection. He shifted into second gear as he approached the intersection. He said he came down the hill at a speed of 25 to 30 miles per hour. As he came down its outside lane there were some cars in the inside lane behind a large truck waiting for the light to change. He said that the light turned green when he was about 30 feet from the intersection, that he had slowed his truck down, and that when he was 15 feet away from the intersection the plaintiff pulled out in front of him. He said she was just moving into the outside lane and was about six feet north of the standing truck when he first saw plaintiff's car. He said that at the time he was going 15 miles per hour. He applied his brakes but hit her car. He said that had plaintiff gone ten more feet he would not have hit her.

He did not know the distance in which he could stop the truck, but said the truck operated and reacted in the same way as an automobile would. When he struck plaintiff's car, the front end of it was two or three feet into Dale Avenue. As to the distance to the crest of the hill from the intersection, the witness had previously, by deposition, estimated it to be 200 feet. But upon trial, he testified that he had measured it and that the crest was 500 feet from the intersection.

In addition to the oral testimony, the jury had the benefit of a number of photographs introduced by both the plaintiff and the defendant. Some of these plainly showed

the intersection and McCausland as it crested to the south. Others showed the car of the plaintiff and the truck of the defendant. The truck appeared to be of a closed variety about the size of a station wagon.

The case was submitted to the jury upon humanitarian negligence, and the plaintiff charged that the defendant's driver failed to slacken the speed of the truck so that her car could pass safely in front of him after he saw, or could have seen, plaintiff come into a position of imminent peril. The pertinent evidence as it relates to the collision has been fully stated because it is charged that plaintiff failed to make a case properly submissible under the theory pursued. The evidence as to plaintiff's injuries and damages will be stated later in considering a point which asserts that the judgment is excessive.

■ Appellant's first point is that the court erred in overruling defendant's after-trial motion for a directed verdict in accordance with its motion for a directed verdict at the close of all of the evidence. It is asserted that there was no evidence that the driver for the defendant could have slackened the speed of the truck after he saw the plaintiff in a position of imminent peril. In pressing this thesis, the defendant seems at times to have overlooked the well-established rule that the court, in passing upon a motion for a directed verdict, must view the evidence in a light most favorable to the plaintiff, and the court must give the plaintiff the benefit of any inferences that may be fairly drawn from the evidence. ☞156(2) Trial, Missouri Digest.

Viewing the evidence in the manner so prescribed, we have to determine whether or not there was sufficient evidence that the driver could have slackened the speed of the truck after he saw the plaintiff in a position of imminent peril. The fact that the defendant's truck was not in the outside lane as the plaintiff started to cross the outside lane is established by the plaintiff's evidence.

From the photographs in evidence it is apparent that the crest of the hill is more than 200 feet from the intersection. A jury may have believed the testimony of the defendant's driver that he came over the crest of the hill before the light changed, but they were not obliged to believe his statement that he was in the outside lane at that time. Since he was not seen by the three witnesses present, there was a reasonable inference that he was traveling in the inside lane, and that he turned into the outside lane while descending the hill toward Dale Avenue.

We have the point of collision six feet north of the curb line of Dale at a time when plaintiff's car was two or three feet eastwardly into Dale. She had traveled to that point from a stop to a speed of five miles per hour, or at an average speed of two and a half miles per hour, and was moving at an average speed of 3.66 feet per second. The defendant's truck at some point during the crossing of the lane was seen 84 feet from the south curb of Dale Avenue, and since the plaintiff's car was traveling 6 feet north of the south curb of Dale, defendant's truck at that time was 90 feet away. Its speed was estimated directly after the accident at 35 miles per hour. Traveling at that speed it was going 51 feet per second, and it would have taken the truck 1.76 seconds to reach the point of collision.

In the same period of time the plaintiff's car, traveling at an average speed of 2.5 miles per hour, would have traveled 6.4 feet to the point of collision, or slightly more than that if we allow for the acceleration factor. Since plaintiff was going at 5 miles per hour at the time of the collision, her car at that speed would be traveling seven and one-third feet per second. The defendant's driver stated that if she had gone ten feet beyond the point of collision, he would not have hit her. It is obvious, therefore, that if the defendant's driver had the ability to react and slacken his speed, the collision could have been avoided.

■ We are therefore left with but one factor to consider, and that is the ability of the defendant's driver to slacken the speed of the truck within the time and distance it traveled. We allow three-fourths of a second for reaction time. Vietmeier v. Voss, Mo.Sup., 246 S.W.2d 785; DeLay v. Ward, 364 Mo. 431, 262 S.W.2d 628.

■ At 35 miles per hour the truck would have traveled 38 feet in three-fourths of a second. This left 52 feet in which to slacken its speed. It stopped within 45 feet from a speed of 35 miles per hour. Since it could stop in that distance, it could have stopped seven feet short of the point of the collision. Since it could have stopped, the speed could have been slackened sufficiently to let the plaintiff's car pass safely in front of the truck. Nored v. St. Louis Public Service Company, Mo.Sup., 319 S.W.2d 608.

It is always apparent in cases such as this that we cannot reduce the facts of the case to one of mathematical certainty, for we are dealing with estimates. Jones v. Fritz, Mo. App., 353 S.W.2d 393. While some of the evidence was confused and in part contradictory, it appears that there was sufficient substantial evidence to submit the case to the jury, and that the trial court did not err in so doing.

■ The second point raised is that the court allowed plaintiff's counsel to inject defendant's antecedent negligence into his argument. Portions of the argument to which objections were made were directed to the speed and position of the truck. These were of course important in determining the humanitarian issue presented. The trial court so held and did not err in overruling the objections.

■■ The next point raised is that the court "erred in refusing to instruct the jury at defendant's request that they could not consider the evidence of defendant's antecedent and primary negligence under the plaintiff's humanitarian submission." No instruction on this was offered by the defendant. After the jury had been instructed and during the course of the argument of plaintiff's counsel, defendant's counsel stated: "I must interrupt again and ask the court to instruct the jury to disregard defendant's antecedent negligence." A "request" for an instruction constitutes the preparing and presenting to the court at the proper time a written instruction with the request that it be given. State v. Harris, Mo.Sup., 356 S.W.2d 889. This was not done, and the court properly refused the oral request made by defendant's counsel.

■ The last point raised is that the judgment for $5,500 is excessive "for the injuries shown to have been directly and proximately caused by the collision." The plaintiff testified that the collision threw her to the left door of her car with such force that the door flew open. She was bruised on the left side of the leg. Her left shoulder was hurt. She went to work the following day but could not continue her work as a waitress. She went to see a Dr. James R. Meador, and thereafter was home from work for two weeks. She went back to work on a 3-hour workday instead of the eight-hour day she had previously worked. She did this for one week. Her wage loss was $215, and the medical service she received was valued at $125. She said that her shoulder was still painful and she could not lift a heavy tray.

Dr. Meador testified that the injuries for which he treated her were caused by the collision. He said that she had pulled a muscle in her left shoulder, and that her condition was painful and would be permanent.

Defendant put a doctor on the stand who had treated the plaintiff for a prior injury to the neck and trapezius muscle. He stated, however, that the last time he saw the plaintiff, in the course of his treatment of her for the prior injury, she had full shoulder movement without pain.

The whole burden of defendant's argument is that the injuries for which the

plaintiff was awarded damages arose out of a prior accident. At the defendant's request the jury was instructed that they could not award damages for "any disablements existing prior to the collision." The question of the cause of the injuries was for the jury and was properly submitted to them. The court which heard all of the evidence reduced the $7,500 verdict to $5,500 by remittitur. We find nothing of record here that would persuade us that the judgment of $5,500 is excessive.

For the reasons above stated, the judgment is affirmed.

RUDDY, P. J., and ANDERSON, J., concur.